Electronically Filed
Intermediate Court of Appeals
CAAP-13-0004086
25-SEP-2015
08:57 AM

NO. CAAP-13-0004086

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JENNIFER MASANG, Claimant-Appellee,
v.
TARGET CORPORATION, Employer-Appellant,
and
SEDGWICK CMS, INC., Insurance Adjuster-Appellant,
and
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,
Insurance Carrier-Appellant

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2012-299(H))
(1-11-00799)

MEMORANDUM OPINION
(By:  Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

In this workers' compensation case, Employer/Appellant
Target Corporation, Insurance Adjuster/Appellant Sedgwick CMS,
Inc., and Insurance Carrier/Appellant Indemnity Insurance Company
of North America (collectively Target) appeal from a Decision and
Order filed on September 19, 2013, by the Labor and Industrial
Relations Appeals Board (LIRAB) in favor of Claimant/Appellee
Jennifer Masang (Masang).  The LIRAB granted summary judgment in
favor of Masang and against Target, thus affirming the July 27,
2012 decision of the Director of the Department of Labor and
Industrial Relations (Director).  In granting summary judgment,
the LIRAB found that Masang suffered a compensable neck injury as
a result of a meeting on November 19, 2011, in which Masang was
questioned about alleged misconduct at work.

On appeal, Target contends the LIRAB erred when it: (1) *sua sponte* created a cross-motion for summary judgment on behalf of Masang; and (2) improperly granted summary judgment in favor of Masang because the LIRAB's procedure violated due process and because there were genuine issues of material fact as to whether Masang suffered a compensable neck injury.

For the reasons set forth below, we conclude that, in the circumstances of this case, it was error for the LIRAB to *sua sponte* create a motion for Masang, and further, the LIRAB erred in deciding the issue in this case without allowing Target to present the testimony of its witness who was present for the trial *de novo*.[1] Accordingly, we vacate the LIRAB's September 19, 2013 Decision and Order.

## I.    Brief Background

On November 19, 2011, while employed at Target, Masang was called into an office to discuss allegations of theft and workplace violence made against her.  Masang claims that while being questioned by Cacique Melendez (Melendez), who is apparently a security supervisor for Target, she at some point moved back from him and suffered a sprain/strain of her cervical spine as a result.  As reflected in medical records, Masang sought medical treatment three days later, asserting neck and back pain, and also *inter alia* denying any recent injury and stating that her symptoms started after she was accused of stealing at work.  Subsequently, Masang filed a WC-5 Employee's Claim for Workers' Compensation Benefits form (WC-5 Form), describing the accident as "I feel I got accused of stealing & hurting someone no details" and describing her alleged injury/illness as "pain in upper back, neck, head & chest. [U]nder a lot of [t]rauma."

---

[1]    In this opinion, we use the terms "trial *de novo*" and "hearing *de novo*" interchangeably because that particular proceeding before the LIRAB is referred to in both ways in the record.  Indeed, under Hawaiʻi Administrative Rules § 12-47-2, which defines terms relevant to LIRAB practice and procedure, "'[t]rial' shall have the same meaning as the term agency hearing, which term is defined in section 91-1(6), HRS."  In turn, Hawaii Revised Statutes § 91-1(6) (2012) provides that "'[a]gency hearing' refers only to such hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91-14."

2

After a hearing, the Director determined that Masang suffered a compensable neck injury arising out of and in the course of employment, but rejected Masang's claim for a mental stress injury. Target's request for partial reconsideration was considered an appeal to the LIRAB.

Pursuant to the LIRAB's Pretrial Order issued on October 17, 2012, the sole issue to be determined by the LIRAB was "whether [Masang] sustained a personal injury of a neck sprain/strain on November 19, 2011, arising out of and in the course of employment." Trial de novo was scheduled to commence on May 31, 2013. On May 28, 2013, three days before trial, Target filed a motion for summary judgment on the grounds that Masang did not injure her neck, and that even if she had, the injury did not occur out of and in the course of employment with Target. Among the exhibits attached in support of Target's summary judgment motion were some of Masang's medical records, which Target asserted supported its position that Masang had not sustained a neck injury as a result of her employment.

On May 31, 2013, two matters were thus scheduled before the LIRAB -- first, a hearing on Target's motion for summary judgment, and second, a trial de novo. On that date, the LIRAB opened the hearing on Target's motion for summary judgment. Because Masang apparently had not been served with a copy of Target's motion for summary judgment, the LIRAB provided her with a copy, gave her some time to review it, and then allowed her to testify under oath in response to the motion. During her testimony, Masang testified inter alia about what happened while in the meeting with Melendez, including:

> So I was sitting like this because, you know, I was working and I just -- you know, I was like this, and he was sitting here, and towards the end of the -- that question about the stealing part, he went like, oh, you had -- with his paper he went, oh, you had your chance. And you saw me go back. You know, he saw me go back, and I went like, oh, like what is this and I started rubbing my back. Nellie saw. God knows he saw, but he not saying nothing.

(The LIRAB later made a finding in its Decision and Order that Masang "experienced neck pain after she sharply pulled her head and neck away from Employer's inquisitor during a meeting or counseling session at work."). Masang testified that she felt a

3

"mean poke" in the middle of her back and "the thing just went run up towards my neck and my head and I started getting like back pain and headaches[.]" At various points in the hearing, the LIRAB asked Target's counsel if he wished to proceed with the motion for summary judgment, to which he responded in the affirmative. When asked if he wished to cross-examine Masang, Target's counsel stated that he had no questions for Masang regarding the motion, and later noted that "during the hearing de novo I may have questions." The LIRAB noted that Target's counsel had reserved his right to cross-examine, and then a recess was taken.

Upon resuming the hearing on Target's motion for summary judgment, the LIRAB asked Target's counsel if he wished to proceed with the summary judgment motion, to which he replied in the affirmative. The LIRAB then stated inter alia that "[t]he board is struck by the testimony given by Ms. Masang, to the extent that we are unable to reach a conclusion that a physical injury did not occur." The LIRAB further noted that it deemed Masang's testimony as being equivalent to a declaration or affidavit in opposition to Target's motion for summary judgment and announced its intent to grant summary judgment for Masang. Target's counsel responded that the LIRAB should not sua sponte create a summary judgment motion for Masang, that in any event there were genuine issues of material fact that precluded summary judgment in her favor, and that the LIRAB should proceed to the trial de novo and allow Target to present the testimony of Melendez, who was present for the trial. Target's counsel represented that, if allowed to testify, Melendez would refute the fact of injury and the description of injury by Masang. Target's counsel also asserted that, in light of the unusual position taken by the LIRAB, he requested to withdraw Target's motion, which the LIRAB denied. The LIRAB then cancelled the trial de novo over Target's objections.

On September 19, 2013, the LIRAB issued the Decision and Order affirming the Director's decision.

4

## II.  Standard of Review

Appellate review of a LIRAB decision is governed by Hawaii Revised Statutes (HRS) § 91-14(g) (2012), which provides:

> Upon review of the record[,] the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1)  In violation of constitutional or statutory provisions; or
>
> (2)  In excess of the statutory authority or jurisdiction of the agency; or
>
> (3)  Made upon unlawful procedure; or
>
> (4)  Affected by other error of law; or
>
> (5)  Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6)  Arbitrary or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91-14(g), conclusions of law (COLs) are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3). Tam v. Kaiser Permanente, 94 Hawai'i 487, 494, 17 P.3d 219, 226 (2001)(citation, quotation marks and brackets omitted).

## III. Discussion

### A.  LIRAB's Sua Sponte Creation of a Summary Judgment Motion For Masang

"[A] presumption of validity is accorded to decisions of administrative bodies acting within their sphere of expertise and one seeking to upset the order bears the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences" Tam, 94 Hawai'i at 490, 17 P.3d at 222 (quoting In Re Gray Line Hawai'i, Ltd., 93 Hawai'i 45, 53, 995 P.2d 776, 784 (2000)).

In its Decision and Order, the LIRAB explained why it created a summary judgment motion on Masang's behalf as follows:

> The Board concurs that the purpose of summary judgment is to expedite matters where "there is no genuine issue as to any material fact." This purpose should not be

5

> obstructed merely because one party has not entirely fulfilled the technical formalities conventionally expected.
>
> In this case, Employer filed its Motion with the Board and mailed it to Claimant on Hawaii island just three days prior to the scheduled hearing. Claimant had not received Employer's Motion until she appeared on Oahu from the Big Island; she was provided a photocopy of the Motion and the memorandum in support by the Board's staff. She spent ten minutes reviewing said document. As a *pro se* Claimant, she did not have the legal knowledge to know that she could prepare and file a Motion for Summary Judgment on her own. The Board was <u>within its discretion to construe her sworn testimony and opposition to Employer's Motion and the records and files herein as her own Cross-Motion for Summary Judgment and argument in support thereof</u>.

(Emphasis added.)

The LIRAB relied on <u>Flint v. Mackenzie</u>, 53 Haw. 672, 501 P.2d 357 (1972), in asserting that it had discretion to construe Masang's testimony in opposition to Target's motion for summary judgment as a cross-motion on her own behalf. In the LIRAB's Decision and Order, it asserts that based on <u>Flint</u>, "[e]ven in the absence of a formal motion for summary judgment filed by Claimant, the Supreme Court of Hawaii has looked with approval upon and allowed summary judgment for a non-moving party to be entered." In <u>Flint</u>, the Hawai'i Supreme Court affirmed that, where there is no genuine issue of material fact, the circuit court could grant summary judgment for a non-moving party, reasoning that the purpose of summary judgment is to expedite matters and this "should not be thwarted because one party has not fulfilled the mechanical procedures normally required." <u>Id.</u> at 672-73, 501 P.2d at 357.

<u>Flint</u> was construing Rule 56 of the Hawai'i Rules of Civil Procedure (HRCP). The HRCP apply to civil cases in the circuit courts, but do not as a general matter apply to worker's compensation proceedings before the LIRAB. <u>See</u> HRCP Rules 1 and 81. Moreover, the relevant provisions of the Hawai'i Administrative Rules (HAR) related to LIRAB proceedings do *not* incorporate HRCP Rule 56. That is, HAR § 12-47-32 dealing with motions before the LIRAB makes no reference to incorporating HRCP Rule 56 (whereas, for instance, HAR § 12-47-31 related to discovery in LIRAB proceedings does reference and incorporate the HRCP for discovery purposes). Therefore, <u>Flint</u> is

distinguishable because it was decided considering HRCP Rule 56.

Under HAR § 12-47-32, "[a]ll motions, except when made during a trial, shall be _in writing_, state the grounds for the motion, set forth the relief or order sought, and be accompanied by a memorandum in support of the motion." (Emphasis added). Notwithstanding HAR § 12-47-32, there certainly may be instances where it would be appropriate for the LIRAB to construe an oral argument of a party as a motion. See HRS § 91-9(d) (2012) (providing that contested case procedures can be modified or waived by the parties and informal dispositions made by agreement of the parties or on default); HAR § 12-47-1 (providing that the rules governing the practice and procedure before the LIRAB "shall be construed to secure the just, speedy, and inexpensive determination of every proceeding"). However, in this case, the LIRAB construed Masang's testimony as a motion for summary judgment, apparently pursuant to HRCP Rule 56 which does not apply to LIRAB proceedings. As we discuss more specifically below, this had the effect of the LIRAB canceling the trial _de novo_ over the objection of Target's counsel and precluding Target from presenting Melendez's testimony. Given these circumstances, and also for the reasons discussed below, we conclude that the LIRAB erred in construing Masang's testimony as a motion for summary judgment.

**B.    The LIRAB Erred in Granting Summary Judgment for Masang**

As noted above, the HAR do not incorporate HRCP Rule 56 for application to LIRAB proceedings. Therefore, the LIRAB's reliance on Flint is misplaced, as is much of Target's briefing that relies on case law relevant to HRCP Rule 56. This does not mean that the LIRAB cannot adjudicate cases in summary fashion when appropriate. See HRS § 91-9(d). However, in ascertaining whether LIRAB utilized proper procedure in adjudicating this case, we do not apply HRCP Rule 56, but instead focus on relevant statutes pertaining to the LIRAB and the HAR provisions related to practice and procedure before the LIRAB. See HRS § 386-87 (1993); HRS Chapter 91; HAR Title 12, Subtitle 7, Chapter 47.

Under HRS § 386-87, which pertains to appeals to the LIRAB from decisions by the Director, "[the LIRAB] shall hold a

full hearing de novo on the appeal." Moreover, given that LIRAB is an agency within the definition of the Hawaiʻi Administrative Procedure Act, the provisions of HRS Chapter 91 apply. See Dependents of Cazimero v. Kohala Sugar Co., 54 Haw. 479, 481, 510 P.2d 89, 91 (1973). HRS § 91-9 provides in relevant part:

> § 91-9 Contested cases; notice; hearing; records. (a) Subject to section 91-8.5,[2] in any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.
>
> . . . .
>
> (c) Opportunities shall be afforded all parties to present evidence and argument on all issues involved.
>
> (d) Any procedure in a contested case may be modified or waived by stipulation of the parties and informal disposition may be made of any contested case by stipulation, agreed settlement, consent order, or default.

Moreover, HRS § 91-10 (2012) provides, in pertinent part:

> § 91-10 Rules of evidence; official notice. In contested cases:
> (1) Except as provided in section 91-8.5, any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence and no sanction shall be imposed or rule or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence. The agencies shall give effect to the rules of privilege recognized by law;
>
> . . . .
>
> (3) Every party shall have the right to conduct such cross-examination as may be required for a full and true disclosure of the facts, and shall have the right to submit rebuttal evidence[.]

The HAR also provide relevant authority. Under HAR § 12-47-41, pertaining to rules of evidence, the LIRAB is not bound "by statutory and common law rules relating to the admission or rejection of evidence" and "may exercise its own discretion in these matters, limited only by considerations of relevancy, materiality, and repetition[.]" (Emphasis added). Despite the LIRAB's broad discretion in making evidentiary rulings, however, HAR § 12-47-42 provides that parties have the

---

2   HRS § 91-8.5 (2012) deals with mediation in a contested case.

right to call and examine witnesses and introduce evidence as follows:

> § 12-47-42 Conduct of Hearing and evidence. (a) Testimony shall be taken on oath or affirmation.
>
> (b) Each party shall have the right to call and examine parties and witnesses, to introduce evidence, to question opposing witnesses and parties on any matter relevant to the issues even though that matter was not covered in direct examination, to impeach any witness regardless which party first called the witness to testify, and to offer rebuttal evidence.
>
> (c) Any member may question any party or witness.
>
> (d) The admission of evidence in a hearing shall be controlled by the presiding member in a manner in which the presiding member considers best suited to ascertain the just, speedy, and inexpensive determination of the proceedings.

Further, HAR § 12-47-43 provides that "[e]ach party has the right to conduct such cross-examination of any party's witnesses as may be required for a full and true disclosure of the facts and has the right to submit rebuttal evidence." Under HAR § 12-47-44, "[t]o avoid unnecessary or unduly repetitious evidence, the presiding member may limit the number of witnesses or the time for testimony upon a particular issue." (Emphasis added).

Under the provisions set forth above, a full hearing *de novo* should have been held (unless the parties stipulated otherwise or waived their rights, which they did not in this case); each party had the right to present evidence on the issues involved, cross-examine witnesses and submit rebuttal evidence; and the LIRAB was required to rule on the issue before it based upon consideration of the whole record. Given the procedure utilized by the LIRAB in this case, perhaps in part because it was seeking to apply Flint and HRCP Rule 56 procedures, it did not allow Target to present the testimony of Melendez at the previously scheduled, but subsequently cancelled, trial *de novo*. Importantly, however, the testimony of both Masang and Melendez was relevant and material to determine whether Masang sustained the claimed neck injury in the November 19, 2011 meeting. Moreover, Melendez's testimony was not repetitive, as Target had not submitted any other witness or documentary evidence as to the

actual events at the subject meeting.[3]

Under Hawaii's Workers' Compensation Law, an injury is compensable if by accident it arises out of and in the course of the employment.  HRS § 386-3 (2014).  Here, the crux of the issue before the LIRAB was whether Masang sustained a neck injury as she described during the meeting with Melendez.  Further, Masang testified that Melendez saw her react when she sustained her injury.  Target was entitled to have Melendez testify.

We therefore conclude that the LIRAB's September 19, 2013 Decision and Order was made upon unlawful procedure.  See HRS § 91-14(g)(3).

**IV.  Conclusion**

Based on the foregoing, we vacate the Decision and Order issued by the LIRAB on September 19, 2013, and remand for further proceedings.

DATED:  Honolulu, Hawai'i, September 25, 2015.

On the briefs:

Leighton K. Oshima,
Lauren H. Kalaukoa,
Attorneys for Employer-Appellant,
Insurance Adjuster-Appellant, and
Insurance Carrier-Appellant.

Jennifer Masang,
Claimant-Appellee, *pro se.*

Presiding Judge

Associate Judge

Associate Judge

---

[3]  We note that even assuming arguendo that HRCP Rule 56 procedures applied, there were genuine issues of material fact given the conflicting evidence already before the LIRAB, which would have necessitated proceeding to the trial *de novo,* if HRCP Rule 56 applied.